on the first case, Ortiz v. Stambach. If you can help me with the pronunciation of your name. Yes, Sahasrabuddhe. Okay, and you have two minutes for a vote. Yes, your honor. Go ahead, whenever you're ready. Thank you, may it please the court. My name is Peter Sahasrabuddhe from Hodgson Russ LLP and we represent the defendant appellant, Detective Mark Stombach in the appeal before you. With this appeal, Detective Stombach seeks reversal of the judgment issued against him or in the alternative, a new trial or in the further alternative, a reduction of the jury verdict that was issued against him. And I think the fundamental question that is presented by this appeal is as follows. When a long-standing conviction is overturned or vacated based on newly discovered evidence, is that overturn or vacator of the conviction prima facie evidence of constitutional misconduct on the part of law enforcement personnel? I think there's a more fundamental question. You can agree or disagree with what I think the fundamental question is. If there is evidence of a fabricated confession, does that overcome the presumption of probable cause? And the answer to that is yes, right? I think you would agree with that. If there was evidence, sufficient evidence, non-speculative evidence, that the confession was... Let's talk about that evidence. And again, in the light most favorable to you. Can I suggest a further modification? I agree with the modification of the question that Judge Bianco suggested, but I would go even further or perhaps more narrowly and say if fabrication of the confession or the conviction, does that overcome the presumption? Because I can imagine circumstances where there might be fabrication of evidence, but the fabrication didn't result in the confession or the conviction. But you have the more extreme case here where the evidence supports the proposition that there would have been no confession and no conviction, no guilty plea, no conviction without the fabrication. So, Your Honor, the evidence does not support a conclusion that the confession was fabricated. Let me tell you what I think is the most powerful evidence in terms of the fabrication of it. First of all, we agree that Mr. Ortiz did not commit the crime, right? We agree on that. We agree he was not the perpetrator. The evidence that I threw them with you were many details of the crime of which only the perpetrator would have had knowledge. We agree on that, right? We don't necessarily agree on that. The confession contains details that only someone who knew about the crime scene or later became familiar with details of the crime scene would have known. And the evidence here showed unequivocally and was undisputed that Mr. Ortiz was familiar with the deceased. He was familiar with their apartment, that he went to their funeral. So the jury would have to conclude there that he knew all these details about the crime itself? I mean, they were pretty intricate details about the crime, right? They were, Your Honor, but it was speculation for the jury to- Sail and kick the door, enter through the front door, solo go first, standing in the rear of the apartment, trying to take the gold chain, holding a gun in one hand and a phone in the other. All right? Just because you know the people, you wouldn't know he was holding one gun in one hand and a phone in the other. The TV in the apartment was on. What type of gun? Shot in the belly. I mean, I can go on and on with you. These are very intricate details that someone, just because they knew the person, I wouldn't know all of those details of the actual crime, right? Well, the evidence of what actually took place between Detective Stombach and Mr. Ortiz doesn't show that he was, you know, manipulated or tricked into adopting those- It doesn't show it, but it permits the inference. One has to explain how it was that he came to know these details of the commission of the crime. And if you don't have a logical explanation, if the most logical explanation, there is no other apparent one, then that he was fed that information by the detective, that is very incriminating of the detective as to his having fed him the details that made him believe. We're also talking about a person of unsound mind who was recognized by the detective to be of unstable mind. And it's certainly a conclusion that the jury's verdict could have rested upon. Well, I don't think that the evidence shows that Detective Stombach recognized Mr. Ortiz to be of unstable mind. And I think all the law enforcement testimony was such that no one viewed him as someone who was mentally impaired or out of touch with reality. He was committed, wasn't he? He was in a hospital for this problem for a while. After he- My apologies. After he was arrested, he was evaluated by a psychiatrist employed by New York State who was professionally licensed to make such diagnosis. Even before that, he was hospitalized. The day before, right? He was. He was. He voluntarily went to Buffalo General Hospital when an officer noticed he was under the obvious influence of marijuana and wasn't making sense. But- For whatever reason, they knew that he had been hospitalized for acting in a bizarre manner the day before, correct? I don't think that there's any evidence that suggests that either the set of detectives who interviewed him at Buffalo General knew his reason for being there, or that Detective Stombach talked to the detective who called in the ambulance or knew his reason for being hospitalized the day before. One of the difficulties for your client, it seems to me, is that his testimony was impeached in various ways. And as Judge Bianco said, we have to assume or draw the inference favorable to the verdict, which would be that the jury didn't believe him. And not believing him in some things would have allowed them to not believe him in others. And so, insofar as he was denying having information that then winds up in the confession, we have to assume the jury didn't believe that, don't we? Well, I would say, first of all, the quote-unquote impeachments that took place were largely on collateral matters. It doesn't matter, does it? And, you know, we can argue about whether it was collateral or not for him to have denied some of the things they did. But having questions about whether he was at the hospital or not, and therefore would have known Mr. Ortiz's condition, that was a problem. The impeachment about whether he did stop talking, whether he asked questions, whether he focused on the killings, all of that is very problematic for your client, isn't it? Well, I think with respect to whether he focused on the killings in the 40-minute un-Mirandized informal portion of the interview, I think that's a mischaracterization. I don't think he was actually inconsistent. I think what he said was, I asked limited questions about- Let me ask you, if the jury could rationally conclude that Mr. Ortiz could not have known the details of the confession, let's just assume that for me, all right? The jury could rationally conclude that he could not have known all the details of that confession. And if those details ended up in the confession that your client took, couldn't they rationally conclude that the only explanation is that your client fabricated that? Yes or no? No. No, we don't believe so. How else would they have gotten in there if Mr. Ortiz could not have known those details, and the only person in the room with him is your client, and they walked out of the room, and he wrote those details, he signed a confession with those details on a piece of paper, who else could have given him those details? It could have come from any number. It could have come from when he was at the funeral of the deceased. It could come from- If the assumption is that he couldn't have known all those details because they weren't public, nobody knew all those details. If that's the assumption, then your client had to have fabricated them, right? Well, I don't think he fabricated it. I mean, the assumption- He gave them to him. Your client would be the only person who could have given him those details. Yes or no? We don't believe that the evidence supports that conclusion, but even if he did- You make this argument in your papers that I was scratching my head on, that because Mr. Ortiz can't testify because he doesn't remember what happened, that somehow it's game over. I was shocked by that argument. You can prove, through corroborating evidence, anything with respect to what happened, even if the person who was there, for whatever reason, can't testify about it. You understand that, right? We do. The emphasis on the lack of memory was just to show that there was no contradiction of the law enforcement account. You're saying, in our case, Boyd, that unless he can contradict your client as to what happened in that room, somehow he has to lose, which is crazy. Well, I think what Boyd says very clearly is a differing story or a competing account of what happened is insufficient to overcome- The differing account doesn't have to come necessarily from the plaintiff. The plaintiff could be dead. The plaintiff could have died during a police shooting. You could still find excessive force, even though the plaintiff, right? I agree with that, but our position is no witness. No witness that was called to testify gave a competing account of what took place. I think what Boyd means is that the different account by the person needs to be corroborated. And here, we don't have an account that needs to be corroborated. We have evidence sufficient unto itself. We disagree that the evidence is sufficient unto itself. And you say a jury could not find that your client fed these details to Ortiz? Our position is there's no non-speculative evidence of that. May I ask one question about your reliance on the competing testimony plus line of cases? I don't understand how that's relevant here. Mr. Ortiz wasn't relying on his own competing testimony. He was relying on the circumstantial evidence to which Judge Bianco has been alluding. So I don't understand how this principle is even relevant here. Well, it's relevant because this court said very clearly a competing narrative offered by any party is not enough to rebut the presumption of probable cause. A competing testimony by, you know, in a he said, she said situation. But here, Mr. Ortiz was relying on the totality of circumstances that, as Judge Bianco said, he was urging the jury to conclude, therefore, that he couldn't have known about it. And therefore, look at all these other circumstances that would suggest that the officer knew about it and basically importuned the confession. Why is that not enough and not problematic under this competing evidence plus, competing testimony plus body of law? Well, I think that the circumstantial evidence referenced or highlighted by the district court amounts to speculative evidence. Well, that's a question about its sufficiency. But we have a long body of law that talks about competing circumstantial evidence is as effective as direct evidence, depending on the weight the jury gives it. So circumstantial evidence can support the finding that it was the officer who created the confession in essence. So I think when we're citing Boyd in this context, or sorry, in the context of the presumption of probable cause created by a grand jury indictment, and the general principle that circumstantial evidence can be sufficient to meet one's burden, as a general principle, I think is accepted. But here, I think Boyd, or we read Boyd, to set forth a very specific showing that needs to be made for the presumption of probable cause to mean anything. But this strikes me as relatively straightforward. The presumption that the grand jury indictment can't operate if the grand jury was given false information. And so if the grand jury was given a falsified confession, that would defeat the presumption, right? It would if there were- So now we get to whether the evidence is sufficient to support the jury finding that it was a falsified confession. And our position on that, Your Honor, is that the only testimony that the jury heard, the only evidence that the jury heard, was that this was a legitimate confession taken through proper procedures implemented by two detectives, or one detective, one patrol officer who served as a translator. All right, thank you. Thank you, Your Honor. Now you're from Mr. Durland. Thank you, Judge Bianco. May it please the court. Spencer Durland, Farapoli, Josue Ortiz. I'd like to start by adding a few facts to the ones that Judge Bianco identified, because I think that the evidence is even stronger than that colleague we suggested. In addition to the fact that there is no alternative explanation for how these unique case-specific facts ended up in Mr. Ortiz's confession, you also have the fact that the statement that Mr. Stombach typed out and submitted to the ADA is written in this question-and-answer format that makes it look like there hasn't been any 40 minutes alone, that this is the first time meeting, and that Mr. Ortiz is volunteering these case-specific details from his own knowledge. That's false. That's just as false as the spreadsheets in Morse. That's just as false as the witness identification in Dufort, where there's a very suggestive lineup, and the investigators transmit to the officer, excuse me, to the ADA, only the end result, I identify number three, rather than the suggestive procedure that produced it. And on top of that, if you look at Mr. Stombach's P73 that he wrote to summarize his interaction with Mr. Ortiz, this is page 2902 of the appendix, he excises this 40 minutes alone. He removes it, and he makes it look like Officer Torres was there the entire time. He does the exact same thing at the civil rights trial. Judge Raji, you alluded to the jury's permissible finding of perjury, and counsel here dismisses it as merely collateral. It is anything but collateral. Mr. Stombach lied about whether there was any discussion between himself and Mr. Ortiz during those 40 minutes alone. He was impeached and finally had to admit that, yes, there was a fulsome discussion, but he initially lied about whether there was any discussion at all. He also lied about having knowledge of the case-specific details. Each lie that he told was an attempt to distance himself from the knowledge and opportunity needed to do what he did. He pretended there was no opportunity. He pretended that Torres was there the entire time. He pretended that he had never reviewed the case file, a patently absurd statement that the jury was entitled to reject. And the net result is that we have consciousness of wrongdoing from all of this perjury. We have the documentary evidence that's been submitted, and we have a number of admissions from Detective Stombach himself. He testified that these facts, not just that these facts could not have been known by anyone other than the perpetrator, he also testified that it was too soon after the homicides for Mr. Ortiz to have learned the facts secondhand. That's 2379 of the appendix. So counsel is speculating about, well, maybe Mr. Ortiz learned these facts because he went to the funeral. Maybe Mr. Ortiz learned these facts secondhand. Mr. Stombach himself testified on the stand that couldn't have happened. And he was asserting this as a way to justify himself, to say that's how I knew that he was actually the perpetrator. But of course, we know now Mr. Ortiz was not the perpetrator. And the testimony by Mr. Stombach was false, and the jury was entitled not just to reject it, but also, Judge Raji, as you pointed out, to draw inferences from the falsity of his testimony and the specific pattern that that false testimony took. I also want to make a point, Judge LaValle, you asked about fabrication being instrumental in a conviction. I'd point out that in this instance, the causation element of the fabrication claim was conceded. The jury was instructed to find that if there was fabrication, that it caused a deprivation of liberty. You can find that at 2717 of the record, where the jury is given that instruction. So the question you raised, Judge LaValle, is not present in this case because of that stipulation. If I could make a few points about the competing testimony plus discussion, because I think really, as Chief Judge Wolford pointed out, this is the anti-Boyd case. The central concern of Boyd, as Judge LaValle and Judge Raji pointed out, is a plaintiff who's relying entirely on his own self-serving testimony to overcome the presumption of probable cause. And in that instance, if the self-serving testimony is itself sufficient, then how much work is the presumption really doing? But here, Mr. Ortiz is not relying on his own direct testimony other than to establish his mental state. And he's instead relying on admissions extracted from Mr. Stombach on the stand. He's relying upon the stipulation. He's relying upon Dr. Coggin's unrebutted expert opinion testimony about his mental state and various other documents as well. So this is the anti-Boyd case. It doesn't make any sense at all that a person would be out of court because they're not offering the self-interested testimony that Boyd found problematic. And I think it's no surprise that in the 20-plus years that Boyd has existed and the 44 opinions of this court that have cited Boyd, not one of them, not in the majority, dissent, concurrence, no judge has described Boyd the way Mr. Stombach does. If I could make one more point, Your Honors, about the facts here and there was some question about whether the officers really knew about Mr. Ortiz's mental state. Let me give you some of the evidence that the jury had in front of it. First, as I mentioned before, it had the unrebutted opinion testimony of Dr. Coggins. She said Mr. Ortiz was psychotic. He was in the midst of a full-blown psychotic break. He has schizophrenia. This was the first onset of it. He was psychotic on November 15th, the day before the purported confession. And that by November 19th, when she first saw him, he was one of the most seriously ill people she had ever seen in her entire career. In addition, I very much disagree with counsel's depiction of the November 15th interviews. It's not correct that those officers didn't recognize Mr. Ortiz's illness. They recognized it immediately. They called an ambulance to take him to the hospital, excuse me, for a psyche valve. They knew right off the bat, the second they saw him, that this man is extremely sick and he's saying lots of wild things that aren't remotely credible, so much so that they made no attempt to follow up on them whatsoever. And the ease with which those officers could reject the things Mr. Ortiz was saying, I think is certainly competent evidence for the jury to consider when it's asking itself, okay, what did Mr. Stombach know on the 16th? Because Dr. Coggins said the progression of this illness is a consistent decline. He's worse on the 16th than he was on the 15th when his statements could be rejected out of hand. When he was found to have no information whatsoever about these homicides. So that evidence was before the jury. It was entitled to find that Mr. Stombach recognized just as readily as those officers on the 15th the illness that Mr. Ortiz had. And rather than doing what they did, which is to simply walk away and move on, continue the investigation, he took the opportunity to exploit it. There are no questions from the court. We ask that the judgment be affirmed. Thank you. All right. There's two minutes of rebuttal. I do want you to address, Mr. Durland reminded me that on this issue of whether or not Mr. Ortiz could have gotten the details from the Thickens family or some other source. Your client testified on page 2, 3, 7, 8, and 7, 9 that they were unique in nature. They were specific in only a person that was inside the crime scene would have known them. And then listen to this line. There is no reason he, Mr. Ortiz, would have known these specific type of items and described them to me in his sworn statement unless he was indeed there. So your own client testified to this jury that only someone who was there would have had those details. So why couldn't they accept on this point at least your client's own testimony? Well, I mean, I think what Detective Stombach was saying in context was it indicated to him, the statement indicated to him or suggested to him that the person who, that Mr. Ortiz was familiar with the details or had knowledge of the details of the crime scene. I don't think he was trying to relay to the jury that there was no way that anyone could be familiar with those details but for being a perpetrator of the homicide. You see, you're construing all of this and the jury would not have been required to construe it that way. It could have construed it to mean that to confirm the fact that only someone who had knowledge of the interior of the crime scene would know these facts. Mr. Ortiz didn't and that your client had access to that information. Well, I think it's speculative or it was a speculative inference for the jury to conclude that Mr. Ortiz then could have repeated those details in Spanish to a translator 40 minutes later when Officer Torres arrived to do the Mirandize portion of the interview. And what you have is undisputed testimony from Officer Torres that the Q&A Mirandize portion of the interview was in fact an accurate reflection of what Mr. Ortiz said to Detective Stombach and to Officer Torres on November 16th. Can I ask you a question because you only have 30 seconds left and you haven't spoken about the damages. But for Steve-O, he said that $1 million per year of wrongful incarceration is not conscience shocking. So here we have less than that, right? It's $500,000 per year. So how could this be overturned based upon that prior holding? It's our position, Your Honor, that there was only general and nonspecific testimony regarding emotional distress damages. Just the loss of freedom itself, just the imprisonment is worth, according to us, at least $1 million. The jury could award at least $1 million per year without any emotional, you know, additional emotional impact. Just the loss of freedom itself. Well, we read those authorities to say the loss of freedom plus detailed testimony as to the emotional distress. But the point is taken by the court. We do acknowledge those- And we also said in Jennings as to punitive damages, a one to four ratio of compensatory to punitive was, you know, should not be disturbed as a permissible ratio. And we don't have anything near that, right? We don't have a one to four. The punitive damages are four times the compensatory, not even close, right? Our dispute with the punitive damages is not with respect to the ratio of the damages. It's with respect to the evidence that came out of trial. All right. Thank you. Thank you, Your Honor. It's a reserved decision. Thank you both. Have a good day.